IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| | * |
| v. | * Criminal No. **PJM 09-0265** |
| | * |
| **WILSON LEE GARRETT,** | * |
| | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Wilson Lee Garrett has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 194, the Government has responded in Opposition, ECF No. 198, and Garrett has replied, ECF No. 202. For the reasons set forth below, the Court **DENIES** the Motion.

I.

On March 21, 2011, Garrett was charged in a Superseding Indictment with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841 (Count 1); attempted possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841 (Count 2); possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. § 841 (Count 3); and possession of firearms and ammunition in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 4). ECF No. 62. Garrett pled not guilty to all counts. ECF No. 65.

At a jury trial, which commenced on May 18, 2011, and at which Judge Alexander Williams presided, witnesses testified that Garrett, a Department of Justice employee, had bought and sold cocaine. *See* ECF Nos. 81-96. David Zellars, for instance, testified that he received regular shipments of cocaine from Mexican drug cartels totaling 10-15 kilogram and that, in 2006, he and

Garrett reached an agreement whereby Garrett would purchase a kilogram of cocaine from Zellars for $24,000. ECF No. 119 at 52-55.

Thereafter, Zellars and Garrett met on approximately 15 to 20 occasions, during which Zellars sold Garrett one or two kilograms of cocaine at a time, totaling between 20 and 25 kilograms of cocaine. *Id.* at 67. Later, Zellars agreed to cooperate with the Drug Enforcement Administration, and placed various monitored calls to Garrett. *Id.* at 111, 122. Federal authorities conducted a search of Garrett's house, finding many cell phones, firearms, a money counter, and a baggie with 3.4 grams of cocaine. ECF No. 130.

Another witness, Laray Maddox, also tied Garrett to the drug trade. He identified Garrett as a supplier for him and for an associate by the name of Tyron Butler. ECF No. 130 at 160-63. Maddox stated that while he had not spoken with Garrett, he had in fact seen him at various drug transactions. *Id.*

In defense, Garrett called a number of witnesses who testified that he was involved with the music promotion business, the suggestion being that this explained away otherwise incriminating evidence. *See, e.g.,* ECF No. 131 at 70-71, 141. Garrett himself took the stand and testified similarly, asserting that his monitored conversations with Zellars actually referred to music promotion, not to an attempt to purchase cocaine. *Id.* at 174-76, 202-204. In support of this argument, Garrett even produced a written contract that supposedly showed that he had an agreement with Zellars in connection with his music promotion business. *Id.* at 175. Rebutting Garrett's testimony and purported contract, the Government introduced evidence that Garrett had previously forged documents and, during cross-examination, asked Garrett whether the purportedly exculpatory contract—which misspelled Zellars' name—was forged. *Id.* at 191-206. Garrett denied this. *Id.*

On May 26, 2011, the jury found Garrett guilty on all four counts of the Superseding Indictment. ECF No. 96.

The Presentence Report ("PSR") prepared by Probation for Garrett's sentencing calculated Garrett's base offense level as 34 based on the amount of drugs attributed to him (15 kilograms to 50 kilograms of cocaine). PSR ¶ 18. With the Government's requested 2-level enhancement for obstruction of justice due to Garrett's actions at trial, the suggested total offense level was 36. *Id.* at ¶ 25. Since Garrett was a criminal history category I, the guidelines range was 188 months to 235 months as to Counts 1, 2, 3, which could be served concurrently. *Id.* at ¶ 42. Count 1 also carried a mandatory minimum sentence of 10 years. *Id.* at ¶ 38. Count 4 carried a mandatory 60 month sentence, to be served consecutively to other Counts. *Id.* at ¶ 41.

At sentencing on September 2, 2011, Garrett challenged the amount of cocaine attributed to him, as well as the imposition of the two-level enhancement to his offense level for obstruction of justice. ECF No. 120. The Court rejected both challenges. First, Judge Williams found that the amount of drugs involved was 20-25 kilograms. *Id.* Second, he concluded that Garrett "took the stand and he didn't just testify . . . he doctored evidence and misrepresented and lied." *Id.*

Garrett asked for a sentence of 120 months as to Counts 1, 2, and 3 to be served concurrently and 60 months as to Count 4 to be served consecutively, while the Government asked for 215 months as to Counts, 1, 2, and 3 to be served concurrently and 60 months as to Count 4 to be served consecutively. *Id.* Ultimately, Judge Williams sentenced Garrett at bottom end of the guidelines range, 188 months on Counts 1, 2, and 3, to be served concurrently, and 60 months on Count 4, to be served consecutively, a total of 248 months. *Id.* Judge Williams described Garrett's actions as a "very serious offense" and took Garrett to task for attempting "to trick the Court," noting that he never accepted responsibility for his actions. *Id.* However, Judge Williams also

acknowledged that Garrett was "pretty much a law-abiding citizen and has worked and been a decent fellow." *Id.*

On September 6, 2011, Garrett appealed his conviction and sentence to the U.S. Court for the Fourth Circuit, ECF No. 116, which the Fourth Circuit affirmed, *United States v. Garrett*, 493 F. App'x 409 (4th Cir. 2012). Garrett appealed again to the Supreme Court and the Supreme Court denied certiorari on May 13, 2013.

On May 9, 2014 (four days prior to the May 13, 2014 deadline for filing a § 2255 Petition), Garrett filed a Motion for Extension of Time to file § 2255 Petition. He then filed a Motion to Vacate under 28 U.S.C. § 2255, which after much briefing, was denied by the Court on June 16, 2017. ECF Nos. 185, 186.

On July 11, 2016, Garrett filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. ECF No. 168. He sought to reduce his 188 month sentence to 151 months as to Counts 1, 2, and 3. On July 19, 2016, the United States consented to the Motion, ECF No. 169, and on July 27, 2016, the Court granted the Motion and sentenced him to a combined 211 months, ECF No. 170.

On June 4, 2020, Garrett, represented by counsel, filed the instant Motion for Compassionate Release. The Government responded but on June 16, 2020, the Parties submitted a Joint Motion to Stay Briefing for Four Weeks because Garrett had been furloughed by the Bureau of Prisons ("BOP"). The Court granted the Motion to Stay on June 19, 2020, and Garrett replied on July 23, 2020. The motion is now ripe for decision.

## II.

Until recently, courts lacked authority to entertain compassionate release requests of defendants except upon motion of the Director of the Bureau of Prisons. *See, e.g., United States v.*

*Fletcher*, 2014 WL 12824234 (D. Md. Apr. 14, 2014). However, the 2018 First Step Act, among other things, amended § 3582(c) so as to allow courts to consider compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If a defendant has exhausted his administrative remedies, a court "may reduce the term of imprisonment... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that... (i) extraordinary and compelling reasons warrant such a reduction." *Id.* The defendant generally bears the burden of establishing that a sentence reduction is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Riley*, 2020 WL 3034843, at *5 (D. Md. June 4, 2020); *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020); *United States v. Stowe*, 2019 WL 4673725 at *2 (S.D. Tex. Sept. 25, 2019).

In 28 U.S.C. § 994(t), Congress delegated to the U.S. Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." In U.S.S.G. § 1B1.13, the Sentencing Commission provided examples of "extraordinary and compelling reasons" and mandated that the defendant must also not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and that the reduction must be otherwise consistent with U.S.S.G. § 1B1.13.

III.

Before the court evaluates the merits of the motion, the defendant must demonstrate that

he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Garrett filed such a request with the warden of Federal Medical Center Devens ("FMC Devens"), which was denied on April 21, 2020. ECF Nos. 196-16 and 196-18. He appealed on the same day, and 30 days have since lapsed. ECF No. 196-17. It is uncontested that Garrett has exhausted his administrative remedies.

The Court considers, then, whether Garrett has demonstrated "extraordinary and compelling reasons" for relief under 18 U.S.C. § 3582(c)(1)(A). Garrett argues that, while his circumstances are not "extraordinary and compelling" as explicitly defined in U.S.S.G. § 1B1.13, the Court has the authority to define "extraordinary and compelling reasons" for release under U.S.S.G. § 1B1.13 app. n.1(D), which states that the Director of the BOP can determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." He submits that many courts have held that they, in addition to the Director of the BOP, can make this determination.

U.S.S.G. § 1B1.13 has not been updated since the passage of the First Step Act. *See United States v. Gagne*, 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020). For example, it states that a court may reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," which is clearly inconsistent with the current language of 18 U.S.C. § 3582(c)(1)(A), which allows the defendant to file a motion as well. Further, "cabining the application of § 3582 to the scenarios set forth in the commentary accompanying U.S.S.G. § 1B1.13 is contrary to the [First Step Act], which Congress enacted to remove the BOP as the gatekeeper of compassionate release." *Wise v. United States*, 2020 WL 2614816, at *5 (D.

Md. May 22, 2020). As such, courts across the country, including this Court, have held that a district court has independent discretion to determine the "extraordinary and compelling reasons" that warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). *See, e.g., United States v. Decator*, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (stating that while "Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence"); *see also United States v. Mel*, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Morrison*, 2020 WL 3447757, at *3 (D. Md. June 24, 2020); *United States v. Gutman*, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020).

The Court held in *United States v. Barringer*, 2020 WL 2557035 (D. Md. May 19, 2020) and *United States v. McRae*, 2020 WL 3791983 (D. Md. July 7, 2020) that, in light of the passage of the First Step Act, U.S.S.G. § 1B1.13 and BOP criteria are "helpful guidance," but that a court has independent discretion to determine whether there are "extraordinary and compelling reasons" for release. The Court is also in accord with other judges of this district and many courts nationwide that, in current circumstances, given the difficulties of social distancing while incarcerated and the spread of COVID-19 in BOP facilities during the current COVID-19 pandemic, a defendant may present "extraordinary and compelling reasons" for release if he has a serious medical condition or conditions that place him at high risk for complications if he contracts COVID-19. *See, e.g., Morrison*, 2020 WL 3447757, at *4; *United States v. Riley*, 2020 WL 3034843, at *6 (D. Md. June 4, 2020); *Wise*, 2020 WL 2614816 at *7.

Garrett argues that he has demonstrated "extraordinary and compelling" reasons for release based on his health. He is 47 years old, suffers from chronic kidney disease that requires dialysis,

hypertension, diabetes and is taking a blood thinner—all of which are risk factors for severe illness from COVID-19 identified by the Center for Disease Control. Further, Garrett submits that, despite the fact that he requested a kidney transplant more than four years ago, the BOP has never placed him on the transplant list. Apparently, he was recently told by his assigned social worker that he is a "shoe in" for high placement on the transplant list.

Garrett also states that FMC Devens, where he was incarcerated before being furloughed, has had a severe outbreak of COVID-19 cases and was the seventh most infected facility within the BOP system. He submits that the fact that he has been furloughed does not make a difference because his release is temporary and he will be at risk again whenever the BOP decides to return him to FMC Devens or another facility. He adds that he is in "limbo" because his uncertain return date hinders his ability to seek a kidney transplant due to the prospect that he will be returned to FMC Devens while using anti-rejection drugs that suppress the immune system.

The Government responded before Garrett was furloughed but nonetheless conceded that he has demonstrated "extraordinary and compelling reasons for release."

The Court accepts that Garrett demonstrated extraordinary and compelling reasons for release before he was furloughed. The Court also acknowledges that BOP has sole discretion to order him to report to FMC Devens or another facility, and may order him to report at any time, even in the midst of the COVID-19 pandemic. But there is no indication or reason that BOP will order him back into custody in the middle of the COVID-19 pandemic. Since, as of now, Garrett is not incarcerated, he is not subject to the danger of having risk factors for severe illness from COVID-19 while incarcerated.

That said, the Court assumes without deciding that Garrett has demonstrated "extraordinary and compelling reasons" for release pursuant to 18 U.S.C. § 3582(c)(1)(A) and decides whether the 18 U.S.C. § 3553(a) factors weigh against such relief.

IV.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court also takes into account the factors outlined in 18 U.S.C. § 3553(a). Section 3553(a) states that the Court should impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

The Court also considers such other factors as "the nature and circumstances of the offense and the history and characteristics of the defendant;" and "the kinds of sentences available." 18 U.S.C. § 3553(a). Further, the Court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate. *See Pepper v. United States*, 562 U.S. 476 (2011).

The Government argues that the 18 U.S.C. § 3553(a) factors weigh against reducing Garrett's sentence. The Government points out the quantity of cocaine involved in the offense—20 to 25 kilograms of cocaine—was substantial, and that Garrett had three loaded handguns and ammunition at his home when it was searched. The Government adds that Garrett lied to the Court

and to the jury during trial, and did so repeatedly and continuously. Consequently, according to the Government, Garrett's current sentence of 211 months total is of a length that is "sufficient, but not greater than necessary" to adequately deter him and others from engaging in similar conduct.

The Government also submits that Garrett is a danger to the community because the instant offense involved three loaded handguns recovered from his home, and his prior conviction also involved a firearm.

Garrett, of course, disagrees with the Government's assessment. He argues that he is not the same man as he was in 2011 when he was sentenced. He also argues that his sentence "was not reflective of his success on pretrial release or the fact that his prior record placed him within the lowest criminal history category." In addition, he makes the general argument that sentences for cocaine offenses have dropped considerably since 2011 and the Government now routinely agrees to sentences involving significantly less time than what Garrett received for drug, gun and § 924(c) counts. As such, he says, a reduction in his sentence would not diminish the seriousness of the offense or create an unwarranted sentencing disparity.

Garrett also submits that he is not a danger to the community, pointing out that when released pretrial, he complied fully with the conditions of release. He adds that he does not have a lengthy criminal history, that he has maintained an excellent institutional record, and that he has been furloughed during the COVID-19 pandemic, indicating that BOP does not believe him to be a danger to the community.

The Court is not convinced Garrett poses no danger to the community, although it acknowledges that since he has been furloughed by BOP, he has not engaged in dangerous conduct. The Court cannot overlook the fact that he was found in possession of three firearms during the

search of his residence, or that his prior conviction was for Unlawfully Carrying a Concealed Weapon. More importantly, the Court notes that he does not seem to have fully acknowledged that his actions broke the law. In his motions to the warden and to this Court, he gives scant indication of his rehabilitation, lessons learned, or remorse. In short, it is simply still too early to establish that Garrett is not a danger to the community.

Nor is it clear that a reduced sentence would be "sufficient, but not greater than necessary…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense [and] to afford adequate deterrence to criminal conduct." Though Garrett argues that his offense "is not the type of offense that requires a 211-month sentence," the Court does not believe that a 128-month sentence (the time Garrett has served, accounting for good time credit, which equates to about 60% of his sentence) is the correct result either.

Recurring to Judge William's rationale for the sentence he imposed, he specifically noted "it's not a case to vary" from the sentencing guidelines for many reasons, including Garrett's "disrespect of the law" and his "efforts to trick the Court." ECF No. 120. It cannot be overlooked that Garrett's offense level was increased by 2 levels for obstruction of justice based on his mendacity during trial. The Court remains concerned that Garrett was an employee of the Department of Justice when he committed the instant offense. His criminality was and remains a serious affront to the agency whose very essence was and is to combat crime.

In addition, the reason Garrett was sentenced to 188 months as to Counts 1, 2, and 3 was due to the large quantity of drugs attributed to him—20 to 25 kilograms. Even today, a conviction for conspiracy to distribute that amount of drugs carries a hefty sentence and, excluding his mandatory 60-month consecutive sentence on Count 4 (a count the Government added in a Superseding Indictment), he would still be incarcerated for a few years more because he has not

yet served 161 months in custody. Finally, as the Court already noted, to this day, Garrett still seems not yet to have taken full responsibility for the drugs, guns, untruthful testimony and fabricated evidence in the case.

The COVID-19 pandemic, tragic as it is, does not in this case change the calculus. Garrett's concern that he may be directed to return to custody while on anti-rejection drugs after a kidney transplant is speculative. Though Garrett has been told by the BOP that he will eventually be returned to BOP custody, he may not be directed to return for a considerable time because there is no reason the BOP cannot take his medical conditions into account in its decision.

V.

Based on the foregoing, Garrett's Motion for Compassionate Release, ECF No. 194, is **DENIED**.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 18, 2020